ERNA H. FISCHER, as Administratrix of the Estate of ERNEST HOPPE, Deceased, Respondent, *v.* NEW YORK CENTRAL RAILROAD COMPANY, Appellant; WALTER G. WILLIAMS et al., Doing Business under the Name of WILLIAMS LAKE, Respondents, et al., Defendants.

Third Department, January 7, 1948.

136

*Harry H. Flemming,* attorney for appellant.

*Cohen & McGuirk,* attorneys for defendants-respondents.

*Lloyd R. LeFever,* attorney for plaintiff-respondent.

RUSSELL, J. The defendant, New York Central Railroad Company, appeals from a judgment entered against it on a jury verdict of $10,000, rendered in a death action arising out of a grade crossing accident, which occurred near the hamlet of Binnewater, Ulster County, New York, about 2:35 P. M. on the 21st day of March, 1943.

The grade crossing at which the accident happened is formed by the intersection of the tracks of the Wallkill Valley Branch of the New York Central Railroad with a private roadway leading to a resort known as " Williams Lake ". The railroad tracks run generally in a north and south direction and the roadway in a general east and west direction at the crossing. This roadway is the principal means of ingress and egress to and from " Williams Lake ", a summer and winter resort.

South of the intersection the highway on which the decedent was traveling runs practically parallel with the track of the railroad for a distance of about one thousand feet, but as it nears the crossing it makes an abrupt left turn at a distance of only fifteen or twenty feet from the crossing. As one approaches the crossing from east to west, the direction in

which the deceased was traveling, to the north are high solid rock banks which constitute a cut through which the railroad was built. These banks are from fifteen to twenty feet high on the north side of the crossing and come down to the roadway on the north. There are no embankments on the south of the crossing.

The train, consisting of two locomotives coupled to a caboose, was proceeding from north to south, with its power shut off at a speed of from eighteen to twenty-two miles per hour. The railroad north and at this crossing is a 1% downgrade from north to south. One of plaintiff's witnesses testified it was necessary to be within ten or fifteen feet of the track to have a view to the north.

The defendant's civil engineer testified to various distances which one could see north of the crossing from different points east of the tracks. From a point 35 feet east of the track one could see north of the crossing along the line of the track 130 feet. The distance one could see north of the crossing increased gradually as one approached the track from the east, until at a point 11 feet east of the track one could see north of the crossing 385 feet.

At the time of the accident the automobile was approaching the track in second gear at about ten miles an hour. When the collision occurred the engineer applied the automatic brakes and the fireman testified the train stopped 175 feet south of the crossing. Kuebler, the driver of the automobile testified the train stopped from three to four hundred feet from the point of contact.

The plaintiff's evidence shows that at this crossing there were no gates, no signal devices, no bell, no flagman and no whistling post to the north of the crossing. The only sign erected at the crossing was a small warning sign stating " Warning. This is not a public crossing." It was eighteen inches high and forty-two wide, but not the traditional railroad crossing sign. Two witnesses corroborated the driver of the automobile as to no whistle being sounded and no bell rung. The two engineers and the two firemen on the engines testified that a crossing whistle was sounded 1,300 feet north of the crossing and that the engine bell was ringing. However, the engineer of the train admitted that there was a substantial difference in volume of sound made by a train operating under power as compared to the noise made by a train coasting downgrade without power.

The driver of the automobile was unfamiliar with the crossing, while the owner was familiar as he had been over it many times.

As the automobile reached the track the fireman on the front engine testified that, when the engine was about forty feet distant from the crossing, the decedent looked toward the engine.

Considering the sharp turn of the roadway just before it crosses the railroad track, the high rock banks on each side of the railroad which extended north a considerable distance and which came close to the roadway on the north, the fact that there was no whistling post north of the crossing, the disputed evidence as to whether or not a whistle was sounded or a bell rung, the fact that the train was coasting downgrade without power, the fact that it was a one-track freight road only 39½ miles long, make it possible to arrive at several hypotheses which would forbid the operator of the automobile being guilty of contributory negligence, as a matter of law, and also forbid the imputation, as a matter of law, of contributory negligence to the decedent, the owner of the car. (*Nicholson* v. *Greeley Square Hotel Co.*, 227 N. Y. 345, 349.) The duty of care at such a crossing on the part of the railroad might be found to be the same as at a public highway crossing. (*Crough* v. *New York Central R. R. Co.*, 260 N. Y. 227, 230.) The railroad at such a crossing was bound to give reasonable notice and warning. It was for the jury to determine from the evidence whether or not any warning was given, and if given, whether it was reasonable and proper under the conditions and circumstances. (*Byrne* v. *N. Y. C. & H. R. R. R. Co.*, 104 N. Y. 362, 366.)

Even if the deceased were silent under the circumstances until the car was practically on the crossing, it does not follow as a matter of law that he was negligent. (*Hoag* v. *N. Y. C. & H. R. R. R. Co.*, 111 N. Y. 199, 203.)

Considering all the evidence in this case, the alleged contributory negligence of the driver of the car and the imputation to the owner of said contributory negligence were questions of fact for the jury. The alleged negligence of the railroad was a question of fact for the jury.

The judgment and order appealed from should be affirmed, with costs.

HILL, P. J., HEFFERNAN, FOSTER and DEYO, JJ., concur.

Judgment and order affirmed, with costs. [See *post,* p. 929.]